## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **JASON COTTERMAN**<br>**522 Woodbine Ct.**<br>**Maineville, Ohio 45039** | **Case No. 1:17-cv-608** |
| | **Judge** _____ |
| **Plaintiff** | **Magistrate** |
| **vs.** | |
| **City of Cincinnati**<br>**810 Plum St.**<br>**Cincinnati, Oho 45202**<br>**c/o City Solicitor**<br>**Paula Boggs Muething**<br>**810 Plum St., Suite 214**<br>**Cincinnati, Ohio 45202** | **COMPLAINT WITH JURY DEMAND** |
| **And** | |
| **Chief Eliot Isaac**<br>**Chief of Police**<br>**Cincinnati Police Department**<br>**in his Official Capacity**<br>**c/o City Solicitor**<br>**Paula Boggs Muething**<br>**810 Plum St., Suite 214**<br>**Cincinnati, Ohio 45202** | |
| **John Doe #1, address unknown.** | |
| **John Doe #2, address unknown.** | |
| **Defendants** | |

---

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this matter as a federal question under 28 U.S.C. §1331, because the Complaint raises a claim under the Health Insurance Portability and Accountability Act ("HIPPA"), 42. USC §1320 et. seq. and 42 U.S.C. §1983, deprivation of

1

constitutional rights through State Action.

2.      Venue is proper in this Court as the incidents giving rise to the claim occurred in Hamilton County, Ohio, within the territorial jurisdiction of this Court to hear. The Court has personal jurisdiction over the Defendant as it is headquartered in Hamilton County, Ohio.

**PARTIES**

3.      Plaintiff Jason Cotterman  is a citizen of the United States and of the state of Ohio, residing at the address listed in the caption and former police officer of the Cincinnati Police Department.

4.      The City of Cincinnati is a political subdivision of the State of Ohio.

5.      The Chief of Police of Cincinnati Police Department Chief Isaacs who is sued in his official capacity.

6.      John Doe #1 is an individual, address unknown, who aided and abetted in the violation of Plaintiff's civil rights.

7.      John Doe #2, is an individual, address unknown, who aided and abetted in the violation of  Plaintiff's civil rights.

**FACTS**

8.      Jason Cotterman was a successful and diligent police officer for the Cincinnati Police Department for a period of thirteen years, beginning at the Academy in September, 2003.

9.      Jason had a solid service record with good evaluations (that he meets and exceeds standards, requires little supervision, and works well with others) and several commendations and thank you letters, including being nominated for the MADD award.

10.     On March 22, 2015, Jason Cotterman was involved in the investigation of an incident involving an off-duty police officer who had a one car collision with a stationary object.

2

11.     The off-duty police officer did not show signs of impairment to Jason Cotterman, who has had extensive experience in traffic stops and automobile collisions in evaluating impairment.

12.     Unbeknownst to Jason Cotterman, another officer who was on the scene, but remaining in his cruiser, and did not approach Officer Cotterman, received a statement from a third party witness.

13.     The third party witness indicted that the officer who had had the one car accident appeared to have been driving impaired several blocks earlier.

14.     This information was not timely shared with Officer Cotterman. And the officer with whom it was shared did not act upon it to share it with Officer Cotterman, who had assumed the lead as the first officer on the scene.  The officer failing to share the information was the senior police officer present, and had over twenty years on the force.

15.     As it later turned out, the story of the third party witness was not credible, and was filled with numerous discrepancies, which were detected in the first interview.

16.     Officer Cotterman behaved properly, under the circumstances, in the decision not to cite the officer who had had the one car collision, and a police sergeant hearing the facts agreed.

17.     Upon information and belief, there are thousands of incidents in which persons involved in one car accidents as private citizens have not been cited.

18.     There are literally dozens of incidents involving police officers who have had one car incidents and not been cited, including Chief Eliot Isaacs and the senior police officer on the scene who failed to share information..

19.     The Defendant City of Cincinnati Police Department, acted for political reasons to prosecute Jason Cotterman and the Sergeant for alleged "dereliction of duty" and "obstruction of justice" in not citing the officer involved in the one car collision.

3

20.     On April 29, 2015, the City of Cincinnati brought Officer Cotterman to be "Mirandized" for a potential criminal charge.  As part of that process, there are interrogation rooms that contain audio and video recording equipment.

21.     Prior to entering those rooms, Sergeant McCurly informed Officer Cotterman that "it is in your best interest to go along with the Administration's version of events."

22.     Officer Cotterman invoked his Fifth Amendment rights.

23.     The City then suspended Officer Cotterman's police powers for "Fitness for Duty" on May 1, and, two days later, after Plaintiff invoked his Fifth Amendment rights, detailed Officer Cotterman from District 5 to District 2.  Officer Cotterman became angry at this unfair turn of events, and an OIC for Internal ordered Plaintiff to begin seeing the CPD psychologist on a weekly basis.

24.     The City then cited Officer Cotterman on a 527 arrest form on the weekend of July 4, 2015, and summoned him to appear. Plaintiff was given two criminal charges of "dereliction of duty" and four of "obstruction of justice".

25.     Officer Cotterman considered these charges to be politically motivated, grossly unfair, and frivolous.

26.     The media became interested in the story after charges were filed and started hounding Plaintiff.  Moreover, his wife was pregnant in a high-risk pregnancy.  Officer Cotterman, who had accrued hundreds of hours of time in time banks, began to use his accrued time to deal with the situation.

27.     Around July 7th, 2015, Officer Cotterman went to see the CPD psychologist, who put Officer Cotterman on administrative leave.

28.     The City continued its efforts to criminally convict Officer Cotterman, in a case that went

to trial on March 1, 2016.

29.     The trial was politically motivated and a farce, in that even the City's own Expert Witness, when given the full facts, acknowledged Plaintiff Jason Cotterman's actions were within his discretion as a police officer.   The expert further noted that Officer Pike's actions in not informing Officer Cotterman about the third party witness and not getting out of his cruiser to assist or to check on the accident victim's condition were reprehensible.

30.     Moreover, the City intentionally ignored and failed to share exculpatory evidence, namely that probationary police officer who was riding in in Officer Pike's car corroborated Officer Cotterman's request for help.

31.      The City was, predictably, unsuccessful in its prosecution of Plaintiff Cotterman, whose bench trial handed in a Not Guilty verdict without the Defense putting on a case.

32.     However, after the trial, the City of Cincinnati, through its Police Department, acted to administratively discharge Officer Jason Cotterman within six weeks of its unsuccessful trial.

33.     The City did so by improperly obtaining, and then using, ancient  military medical records.

34.     Although Plaintiff Jason Cotterman had been involved in a medical discharge from the Marine Corps over a decade prior, the records themselves contained significant inaccuracies.

35.     Moreover, Jason Cotterman did not provide any valid authorization for the City of Cincinnati or the Police Department to obtain such records.

36.     The inaccurate medical information contained in the records was used to institute a medical discharge against Plaintiff Jason Cotterman.

37.     He initially appealed, but did not follow through once he learned that, absent a second opinion as an alternative to the City's paid psychologist, that pursuing the appeal would be a

waste of effort.

38.     Officer Cotterman had attempted to get a second opinion, from Dr. Modrell, but the City psychologist refused to provide the military medical records to her on which he based his decision, in part, and someone from Internal Investigations called her to read purposed text messages of Officer Cotterman, rendering her unable to deliver a useful opinion.

39.     The city chose to do, administratively, what it could not do through its farcical trial;  that is, to punish Officer Cotterman for his failure to cooperate with the City's version of events by separating him.

40.      The Cincinnati Police Department has a policy of punishing, reprimanding, and otherwise retaliating against Officers that do not "toe the line" in terms of cooperating with public narrative it wishes to present.

41.     Officer Cotterman, in connection with this administrative discharge, done by a psychologist, Dr. James Daum, was emotionally distraught, because he had lost a job that he did well, did to the benefit of the citizens of the city of Cincinnati, and was experiencing serious and debilitating emotional distress as a result of the City's actions under the color of state law.

42.     Officer Cotterman finally received a detailed action clearing him for duty from another qualified psychologist, who does such assessments in nearby Franklin County and Montgomery Counties.

43.     The City of Cincinnati consented to a reevaluation using its own psychologist, but then trumped up reasons to deny restoring Officer Cotterman to active duty.

44.     Officer Cotterman, through counsel, pointed out the errors in the revised report and gave the City another chance to fix the situation.

45.     Once again, the City failed to rehire Jason Cotterman within a reasonable time.

6

46.     Jason Cotterman, following this unfair and politically motivated prosecution and discharge from the Police Department, then worked to restore himself to full health after his unfair treatment, including working out, abstaining from alcohol, and dedicating himself to being in a state fit to resume his police duties.

47.     As part of this evaluation, after a period of a year, Jason Cotterman went to be reevaluated by another psychologist, one who does the police evaluations for other large Ohio cities, including Columbus and Dayton, and received a clean bill of health.

48.     The Police Retirement fund would not provide Jason Cotterman a medical pension because they believe his condition to be temporary.

49.     After receiving a clean bill of health from another psychologist, that evaluates major police departments, Jason Cotterman furnished this evaluation to the city.

50.     The City of Cincinnati psychologist, again for political motivated reasons of retaliation, administered his own test, but disregarded its results, which showed that Jason Cotterman was psychologically fit for duty.

51.     In doing so, the police department psychologist again referred to ancient medical records, and used isolated instances, in clear contravention of the standard operating procedures used for such instances.

52.     Under the criteria used by the City of Cincinnati Police Department psychologist, it is impossible that Jason Cotterman will ever restored to police duty, in spite of the fact that he is well suited for it.

53.     Jason Cotterman also became involved, through his contacts with the police, in discovering a case where an allegedly corrupt police officer was not disciplined, suspended, or placed on administrative duty in spite of extremely serious allegations of criminal conduct.

54.     The police officer accused of misconduct has, upon information in belief, gotten preferential treatment from the outset of his career, including an early preferential assignment to parks, and an incident in which he, while driving a police cruiser, hit a civilian pedestrian, failed to report it in violation of policy, and received only a written reprimand.

55.     The City of Cincinnati discovered that Jason Cotterman was reporting the misconduct of the Police Department in preferentially treating a corrupt officer based on his personal connections.

**COUNT I – DEPRIVATION OF CONSTITUTIONAL RIGHTS, UNDER COLOR OF LAW, AS PROTECTED IN 42 U.S.C. 1983**

56.   Plaintiff realleges all the foregoing paragraphs as if fully rewritten herein.

57.   The City of Cincinnati and its Police Department's decision to politically prosecute him and then administratively take away Plaintiff Cotterman's police officer status was a deprivation of his constitutional rights as protected in the Fifth Amendment, both substantive and procedural due process.

58.   He was also deprived of his rights because of a clear policy on the part of the City of Cincinnati that would retaliate against police officers that did not toe the line and agree with its public narrative.

59.     The City of Cincinnati acted to maliciously prosecute Jason Cotterman, and abused process, as the suit was brought for an improper purpose, specifically to discourage others from not going along with the CPD's narrative.

60.     The actions of the defendants were taken under color of state law.

61.     The City of Cincinnati and its Police Department acted to intrude upon Jason Cotterman's privacy, a clearly protected right under the United State's Constitution in the numbers of the fourth and fifth amendments of the Constitution of the United States.

62.     The City's use of a criminal search warrant to obtain evidence used in an administrative proceeding violated Plaintiff's due process rights and invaded his privacy, injuring him under color of state law.

**COUNT TWO:    HIPAA VIOLATION OF 42 U.S.C. 1320 et. eq.**

63.     Plaintiff realleges paragraphs 1-55 as if fully rewritten herein.

64.     The City of Cincinnati and its Police Department, acted to improperly obtain Jason Cotterman's military medical records, not relevant to his policing, after thirteen years, and used them to trump up a reason to administratively discharge Jason Cotterman, in violation of HIPPA.

**COUNT THREE:  ABUSE OF PROCESS**

65.     Plaintiff realleges paragraphs 1-55 as if fully rewritten herein.

66.     The City of Cincinnati and its Police Department, knowing that its charges were frivolous and could not be supported under the law, brought charges against Jason Cotterman for an ulterior purpose, that of making an example of a policeman that did not go along with the Department's official story.

67.     This conduct was tantamount to abuse of process.

68.     The conduct was done maliciously, and in an attempt to harm Jason Cotterman's reputation, or with reckless disregard of the probable results.

69.     The action did, in fact, harm Jason's reputation, and inflicted upon him severe emotional distress.

70.     Plaintiff is entitled to compensatory damages, his reasonable attorney fees and costs, and punitive damages to the extent allowed against these Defendants under Ohio law.

**COUNT FOUR:  MALICIOUS PROSECUTION**

71.     Plaintiff realleges paragraphs 1-55 as if fully rewritten herein.

9

72. The City of Cincinnati, aided by Cincinnati Police Department, acted with malice in prosecuting Jason Cotterman.

73. The City of Cincinnati did not have probable cause to prosecute Plaintiff for either obstruction of justice or dereliction of duty.

74. Jason Cotterman was acquitted by the Court after the City's frivolous prosecution.

**PRAYER FOR RELIEF**

WHEREFORE, having fully pleaded his cause, Plaintiff Jason Cotterman asks that this honorable Court order the City of Cincinnati to restore and reinstate him to his position on the Cincinnati Police Department, and his back pay, medical expenses, reasonable costs and attorney fees, punitive damages to the extent allowed by law, and any and other such relief as this Court or a jury may direct.

Respectfully submitted,


*/s/ Robert F. Croskery*
Robert F. Croskery (0064802)
Trial Attorney for Plaintiffs
Croskery Law Offices
3905 Eastern Ave., Suite 200
Cincinnati, OH 45226
Phone:  (513) 232-LAWS (5297)
Fax: (513) 426-7372
rcroskery@croskerylaw.com

Of Counsel:
Croskery Law Offices
Melinda E. Knisley (002662)
3905 Eastern Ave., Suite 200
Cincinnati, OH 45226
Phone:  (513) 232-LAWS (5297)
Fax: (513) 426-7372

## JURY DEMAND

Plaintiff Jason Cotterman hereby demands a jury of eight to hear all issues triable to a jury.

/s/ Robert F. Croskery
Robert F. Croskery (0064802)