UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CIVIL ACTION NO. 1:17-cv-00608-WOB-KLL

JASON COTTERMAN                                                                    PLAINTIFF

VS.                    MEMORANDUM OPINION AND ORDER

CITY OF CINCINNATI;
ELIOT ISAAC, in his official capacity as
Chief of Police for the Cincinnati Police
Department; MATTHEW DEBLAUW,
in his official capacity as Special Agent
for the Federal Bureau of Investigation
and his individual capacity; AND
MICHELLE LONGWORTH, in her
official capacity as a City of Cincinnati
Police Officer and her individual capacity.                                        DEFENDANTS.

This is a 42 U.S.C. 1983 case that arises from the discharge of Cincinnati Police Officer, Jason Cotterman. After his termination, the City of Cincinnati failed to reinstate Cotterman to the Cincinnati Police Department (CPD). In his second amended complaint, Cotterman claims the City of Cincinnati deprived him of numerous constitutional rights and alleges claims of abuse of process and malicious prosecution. (Doc. 107). Also, Cotterman sued FBI agent, Matthew DeBlauw, for violating his constitutional rights. *Id*. The City of Cincinnati, Chief of Police, and Michelle Longworth (collectively "Defendants") moved to dismiss for failure to state a claim. (Doc. 111). Matthew DeBlauw moved to dismiss for failure to state a claim and lack of jurisdiction. (Doc. 113).

The Court previously heard oral argument and took the motions under submission. (Doc. 106). Having carefully reviewed the record, the Court now issues the following Memorandum Opinion and Order.

## *Factual and Procedural Background*

Before Cotterman became a police officer, he served in the United States Marine Corps from 1995-2000. However, a traumatizing and embarrassing experience led him to leave the Corps. (Doc. 87 at 6). To expedite his dismissal from the Corps, he attempted suicide. (Doc. 87 at 7). Ultimately, Cotterman received an Honorable Discharge. By 2004, Cotterman joined the CPD. For years, Cotterman had a solid service record with good evaluations. (Doc. 1 at 2).

On March 22, 2015, Cotterman investigated an accident involving an off-duty police officer. The accident involved a one-car collision with a stationary object. At least one witness believed the off-duty officer was driving impaired, but the story was later found to be uncreditable. (Doc. 1 at 3). As the lead investigator on scene, Cotterman decided not to not cite his fellow officer. (Doc. 1 at 3). That decision led to Cotterman being investigated, and criminally prosecuted, for dereliction of duty and obstruction of justice. Cotterman alleges the CPD acted for political reasons in their prosecution. (Doc. 1 at 3).

Pending the investigation, the CPD transferred Cotterman to a different district. This caused Cotterman to become angry at, what he believed were, unfair events. (Doc. 1 at 4). Because of his anger, the CPD ordered him to see the police psychologist. After Cotterman's meeting with the psychologist, the CPD placed Cotterman on administrative leave while awaiting his criminal trial.

A year later, Cotterman had his trial. At trial, Cotterman failed to move to suppress evidence or challenge any evidence used against him as being "fruit of the poisonous tree". But, ultimately, the jury acquitted Cotterman.

Following the trial, Michelle Longworth, the Internal Investigation officer assigned to Cotterman's case, contacted FBI agent Matthew DeBlauw to obtain Cotterman's military records—without Cotterman's permission. (Doc. 1 at 5). Longworth stated she needed the records to confirm Cotterman worked as a sniper in the military. When DeBlauw sent the records, it included some medical records.

The CPD medically separated Cotterman based on the psychologist's recommendation that he was unfit for duty. Cotterman appealed the medical separation to the City of Cincinnati Civil Service Commission. Yet he never showed for his hearing, forfeiting his right to challenge his discharge. Cotterman worked to restore himself to full health but was denied reinstatement to the CPD. (Doc. 1 at 7). The CPD's psychologist still found Cotterman unfit for duty, partly because of his military medical records. (Doc. 1 at 7). During this time, Cotterman continued alleging the CPD was acting with a political motivation. Ultimately, Cotterman sued.

## *Analysis*

### A. Municipal Liability

Cotterman's complaint specifically names the Defendants in their "official" capacities. As a result, the claims against the Cincinnati Chief of Police and police officers are essentially claims against the entity for which they are agents—the City of Cincinnati. Thus, his complaint fails to state a viable claim against the City of Cincinnati because municipalities are not vicariously liable for the actions of their employees under § 1983. "It is firmly established that a municipality, or ...

a county, cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents." *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978)).

Rather, to state a claim for relief against the City of Cincinnati, the complaint must assert facts showing the misconduct leading to Cotterman's injuries stemmed from a policy, statement, regulation, decision, or custom promulgated by the City. *Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 660 (6th Cir. 2014), *cert, denied*, 135 S. Ct. 1561 (2015) (citing *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003)); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *Monell*, 436 U.S. at 694; *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996).

"The 'official policy' requirement [of *Monell*] was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original). Thus, to succeed on this claim, "plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen." *Bright*, 753 F.3d at 660 (citing *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008)). *See also Polk County v. Dodson*, 454 U.S. 312 (1981) (holding that a municipal policy must be the 'moving force' behind a constitutional deprivation).

Cotterman's complaint fails to allege any facts showing that the alleged violation of his civil rights stemmed from a policy, custom, or practice of the City of Cincinnati. Instead, his complaint alleges,

> The Defendant City of Cincinnati Police Department, acted, under a policy and custom of rewarding favorites of the Chief and punishing those who hurt favorites of the Chief, to prosecute Jason Cotterman and the Sergeant

>    for alleged "dereliction of duty" and "obstruction of justice" in not citing the officer involved in the one car collision.

(Doc. 49 at 4).

Although the complaint makes a blanket reference to a policy, it offers no factual basis. In fact, the conclusory statement above cannot state a claim for relief under § 1983. Cotterman failed to "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). *See also Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013) ("[E]ven assuming there was an underlying constitutional violation, we affirm the dismissal of the *Monell* claim because Plaintiffs have failed to set forth sufficient facts to establish an unconstitutional custom or policy.").

Nor does Cotterman allege any facts showing a custom or practice was the moving force behind his arrest, detention, and prosecution. "[A] custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims." *Burgess*, 735 F.3d at 478 (citations omitted). His complaint fails to assert the existence of any other instances of misconduct that would plausibly support an inference of such a pattern.

To refute this argument, Cotterman argues that the "policy", at the very least, shows the CPD and Chief of Police failed to "adequately train and supervise" its officers. This is exactly the type of legal conclusion couched as a factual allegation that does not pass muster. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

"A failure-to-train claim ... requires a showing of prior instances of unconstitutional conduct demonstrating that the [municipality] ha[d] ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Burgess*,

735 F.3d at 478 (internal quotations marks and citations omitted). Cotterman's complaint fails to allege a single prior instance or statistic in support of this claim. Because there are no factual allegations that would "raise a right to relief above the speculative level," Cotterman's conclusory allegations of an unidentified policy and of a failure to train and supervise fail to state a claim for relief under § 1983. *Twombly*, 550 U.S. at 555.

### B. Defendant Longworth

Longworth seeks dismissal based on the affirmative defense of qualified immunity. To overcome qualified immunity, Cotterman must prove that Longworth's conduct violated clearly established law. Qualified immunity shields government officials from civil liability when their conduct "does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The burden is on the plaintiff to establish the defendant is not entitled to qualified immunity. *Miller v. Admi. Office of the Courts*, 448 F.3d. 887, 894 (6th Cir. 2006).

In *Anderson v. Creighton,* the Supreme Court of the United States reaffirmed those principles governing an inquiry into the validity of a defense of qualified immunity: "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." 483 U.S. 635, 639 (1987). The "objective legal reasonableness" test requires the Court to examine whether a reasonable officer could have believed that the wrongful conduct was lawful, given clearly established law. *Id.* at 641.

Thus, this Court must determine whether obtaining medical records without a warrant violated clearly established law. Cotterman's allegations, taken as true, charge Longworth with violating his Fourth Amendment right. To overcome his burden, Cotterman must prove that a clearly established constitutional right was violated. *Estate of Carter*, 408 F.3d at 310-11.

To determine whether a constitutional right is clearly established, a court "must look first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other courts within [the Sixth Circuit], and finally to decisions of other circuits." *Baker v. City of Hamilton,* 471 F.3d 601, 606 (6th Cir. 2006) (citations omitted). Such decisions must point unmistakably to the unconstitutionality of the conduct complained of and be supported by applicable direct authority that leaves no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting. *Durham v. Nu'Man,* 97 F.3d 862, 866 (6th Cir. 1996) (citation and quotation omitted). Especially without declarative Supreme Court precedent, lower courts must have defined the constitutional right at issue with sufficient certainty and clarity, so that it "would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Sixth Circuit has explained that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Rudlaff v. Gillespie*, 791 F.3d 638, 644 (6th Cir. 2015) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). When determining whether a particular law or right is "clearly established", courts "should not define it at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotation marks and citation omitted). "The clearly established law must be 'particularized' to the facts of the case." *Id.*

In *Kerns v. Bader,* a sheriff obtained plaintiff's medical records from a VA hospital where he had received treatment. 663 F.3d 1173, 1183 (10th Cir. 2011). The hospital provided the records voluntarily. *Id.* at 1179. In holding that Fourth Amendment law was not so clearly established as to require a warrant in such a case, the *Kerns* court explained:

> Complicating the Fourth Amendment analysis in this case is the role of third party doctrine. Under that doctrine, "the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by [the third party] to Government authorities, even if the information is revealed [to the third party] on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *United States v. Miller,* 425 U.S. 435, 443, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). The Supreme Court has already applied third party doctrine to financial information, holding that the government may seek without a warrant confidential information clients have entrusted to their banks for safe keeping. *Id.* And at least some courts have indicated the same analysis applies to personal medical records entrusted by patients to hospitals or care providers—allowing law enforcement to seek without a warrant medical records held by third parties. *See* Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 2.7(d) (4th ed. 2004) (collecting authority). While there's certainly room to debate whether and how third party doctrine should apply to medical records, *see, e.g.,* Poornima L. Ravishankar, Comment, *Planned Parenthood is Not a Bank: Closing the Clinic Doors to the Fourth Amendment Third Party Doctrine,* 34 Seton Hall L.Rev. 1093 (2004); *United States v. Warshak,* 631 F.3d 266 (6th Cir. 2010) (declining to extend *Miller* to ISP records), and while we in no way prejudge these questions, the fact that a live (and heated) debate exists on them is more than enough to preclude us from saying that the Sheriff violated clearly established law when he sought records held by a third party care provider.

*Id.* at 184-1185.

Additionally, courts within this circuit, and other courts across the country, rely on *Kerns* to hold that the Fourth Amendment right is not clearly established when it pertains to warrants for medical records. *See, e.g., Gold v. City of Sandusky*, 3:15 CV 2001, 2018 WL 1468992, at *11 (N.D. Ohio Mar. 26, 2018).

Cotterman has thus not shown that the Fourth Amendment law was so "clearly established to the extent that a reasonable person in the officer's position would know the conduct complained of was unlawful." *O'Malley v. City of Flint*, 652 F.3d 662, 667 (6th Cir. 2011). Defendant Longworth is thus entitled to qualified immunity.

C. **Defendant Deblauw**

DeBlauw argues the claims against him should be dismissed for four reasons: (1) a *Bivens*[1] remedy does not exist; (2) he is entitled to qualified immunity; (3) Cotterman's claims are untimely; and (4) Cotterman failed to plead a viable substantive claim.

First, the Court will begin with the *Bivins* analysis. *Bivens* recognizes when a person may bring a claim for damages against a federal agent for alleged violations of constitutional or statutory rights. *Bivens* claims may arise in three circumstances: (1) unlawful search and seizure in violation of the Fourth Amendment; (2) termination of employment based on gender discrimination in violation of the Fifth Amendment due process clause; and (3) failure to provide adequate medical treatment to an inmate under the cruel and unusual punishment clause of the Eighth Amendment. *See also Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980).

Cotterman asks this Court to extend *Bivens* claims to include the dissemination of medical records to another officer. In the alternative, he argues that DeBlauw's actions fall within the Fourth Amendment category.

Extending a *Bivens* claim beyond the three recognized categories noted above is commonly discouraged. In *Ziglar v. Abbasi*, the Supreme Court made it clear that expansion of *Bivens* is a

---
[1] *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

"disfavored judicial activity". 137 S. Ct. 1843, 1857 (2017). In fact, an exception cannot be made if: (1) "alternative, existing process[es]" guard against the type of harm at issue; or (2) any other "special factors counse[l] hesitation" in implying a damages remedy. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).

Cotterman alleges DeBlauw violated his constitutional right to privacy by disseminating his military medical records. However, the Sixth Circuit has declined to extend *Bivens* to privacy issues. In *Downie v. City of Middleburg Heights*, the Court held "the Privacy Act is a comprehensive legislative scheme that provides a meaningful remedy for the kind of wrong Downie alleges that he suffered" and for that reason, courts "should not imply a *Bivens* remedy." 301 F.3d 688, 696 (6th Cir. 2000).

Also, a Court should not extend *Bivens* when there is "reason to pause before applying *Bivens* in a new context or to a new class of defendants." *Hernandez v. Mesa*, 140 S.Ct. 735, 744 (2020). Here, Cotterman's extension request could deter law enforcement from sharing information and expose defendants to being sued in their individual capacities, even if the sharing of information is permissible under the Privacy Act.

In the alternative, Cotterman argues that DeBlauw conducted an illegal warrantless search by disclosing his medical records. But this alleged harm could be remedied under the Privacy Act. All of these factors dictate denying Cotterman's request for an extension of *Bivens*.

Furthermore, DeBlauw is entitled to qualified immunity. As noted above, courts are actively debating whether it is a Fourth Amendment violation for medical records to be provided without a warrant. *See Kerns v. Bader,* 663 F.3d 1173, 1183 (10th Cir. 2011); *Gold v. City of Sandusky*, 3:15 CV 2001, 2018 WL 1468992, at \*11 (N.D. Ohio Mar. 26, 2018); *Lee v. City of*

*Columbus, Ohio*, 636 F.3d 245 (6th Cir. 2011); *Summe v. Kenton Cnty. Clerk's Office*, 604 F.3d 257 (6th Cir. 2010). Like Longworth, therefore, DeBlauw is protected by qualified immunity.

Finally, DeBlauw also contends that the claims against him are untimely. This Court agrees. §1983's statute of limitation period begins on the date of the constitutional violation. *See Cooey v. Strickland,* 479 F.3d 412 (6th Cir. 2007) (explaining that the statute of limitations period begins "when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred") (citations omitted). State law governs the statute of limitations for 42 U.S.C. § 1983 actions. Specifically, it is governed by the limitations period for personal injury cases in the state in which the cause of action arose. *Wallace v. Kato,* 127 S. Ct. 1091, 1094 (2007). Cotterman argues the applicable statute of limitations should be four years under Ohio Rev. Code 2305.09—but that is incorrect.

Courts have repeatedly held Ohio Rev. Code 2305.10 governs the applicable statute of limitations for §1983 actions. *Carter v. Furmon*, 2018 WL 3377148 (S.D. Ohio 2018); *Zappone v. United States*, 870 F.3d 551 (6th Cir. 2017); *Webster v. Spears*, 664 Fed. Appx. 535, 537 (6th Cir. 2016); *Santino v. Columbus Public Sch.,* 833 F. Supp. 2d 780, 793 (S.D. Ohio 2011); *Bishop v. Children's Ctr. for Developmental Enrichment,* 618 F.3d 533, 536 (6th Cir. 2010). In Ohio, that statute of limitations is two years. *Id.*; *see also* Ohio Rev. Code 2305.10. [2]

---

[2] Ohio Rev. Code 2305.10 was found unconstitutional by *Groch v. Gen. Motors Corp.* However, it is only unconstitutional for section (f), which is inapplicable to the statute of limitation provision at issue here. *Groch*, 2008-Ohio-546, 199, 117 Ohio St. 3d 192, 227, 883 N.E.2d 377, 410. ("[T]o the extent that former R.C. 2305.10(F) (now (G)) affects an accrued substantive right by providing an unreasonably short period of time in which to file suit for certain plaintiffs whose injuries occurred before the S.B. 80 amendments to R.C. 2305.10 became effective, and whose causes of action therefore accrued for purposes of R.C. 2305.10(C), former R.C. 2305.10(F) is unconstitutionally retroactive under Section 28, Article II of the Ohio Constitution."). Courts have continued to hold the applicable statute of limitations for §1983 claims is two years. *See Webster v. Spears*, 664 Fed. Appx. 535, 537 (6th Cir. 2016); *Santino v. Columbus Public Sch.,* 833 F. Supp. 2d 780, 793 (S.D. Ohio 2011); *Bishop v. Children's Ctr. for Developmental Enrichment,* 618 F.3d 533, 536 (6th Cir. 2010).

Here, a jury acquitted Cotterman in March 2016 and he was dismissed as a CPD officer in May 2016—at the latest. (Doc. 49 at 6). Thus, the latest Cotterman could bring a timely claim was 2018. The original complaint was filed in 2017, but the amended complaint—adding DeBlauw—was filed in 2019.

Cotterman argues that even if the limitations period is two years, he tolled the statute of limitations by naming a "John Doe" defendant. That is incorrect. "The naming of a John Doe defendant does not toll the statute of limitations." *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *see also Cooper v. Montgomery County, Ohio*, 199 F. Supp. 3d 1189, 1191-92 (S.D. Ohio 2016). Nor does amending the complaint to add DeBlauw relate back to the original complaint. *See* Fed. R. Civ. P. 15(c)(1)(C).

Fed. R. Civ. P. 15(c)(1)(C) allows for an amendment of parties to relate back to the original complaint if,

> the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

*Id.* The amendment does not relate back simply because a plaintiff fails to exercise due diligence in determining the identity of a John Doe. *Cooper*, 199 F. Supp. 3d at 1190 (citing *Brown v. Cuyahoga Cty.*, 517 Fed. Appx. 431, 433-34 (6th Cir. 2013); *Smith v. Akron*, 476 Fed. Appx. 67, 69 (6th Cir. 2012).

For all these reasons, Cotterman's claims against DeBlauw must be dismissed.

Therefore, having reviewed this matter, and the Court being advised,

**IT IS ORDERED** that the Defendants' motions to dismiss (Docs. 111, 113) be, and are hereby, **GRANTED**. A separate judgment shall enter concurrently herewith.

This 25th day of June 2021



Signed By:
*William O. Bertelsman* WOB
United States District Judge